FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 03, 2022

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HENRY O.,[1] <br><br>             Plaintiff, <br><br>     vs. <br><br> KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[2] <br><br>             Defendant. | No. 4:20-cv-05141-MKD <br><br> ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT <br><br> ECF Nos. 18, 19 |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment.  ECF

Nos. 18, 19.  The Court, having reviewed the administrative record and the parties'

briefing, is fully informed.  For the reasons discussed below, the Court denies

Plaintiff's motion, ECF No. 18, and grants Defendant's motion, ECF No. 19.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation. *Id.*

ORDER - 2

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§

404.1502(a), 416.902(a). Further, a district court "may not reverse an ALJ's

decision on account of an error that is harmless." *Id*. An error is harmless "where

it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at

1115 (quotation and citation omitted). The party appealing the ALJ's decision

generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*,

556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act. First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's

impairment must be "of such severity that he is not only unable to do his previous

ORDER - 3

1  work[,] but cannot, considering his age, education, and work experience, engage in

2  any other kind of substantial gainful work which exists in the national economy."

3  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

4      The Commissioner has established a five-step sequential analysis to

5  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§

6  404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner

7  considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i),

8  416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

9  Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

10  404.1520(b), 416.920(b).

11      If the claimant is not engaged in substantial gainful activity, the analysis

12  proceeds to step two.  At this step, the Commissioner considers the severity of the

13  claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the

14  claimant suffers from "any impairment or combination of impairments which

15  significantly limits [his or her] physical or mental ability to do basic work

16  activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c),

17  416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

18  however, the Commissioner must find that the claimant is not disabled.  *Id.*

19      At step three, the Commissioner compares the claimant's impairment to

20  severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.

ORDER - 5

20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On October 9, 2018, Plaintiff applied both for Title II disability insurance benefits and Title XVI supplemental security income benefits alleging an amended closed period of disability, May 28, 2014 through March 20, 2019.  Tr. 16, 100-01, 213-25.  The applications were denied initially and on reconsideration.  Tr. 132-35, 140-45.  Plaintiff appeared before an administrative law judge (ALJ) on November

ORDER - 6

15, 2019.  Tr. 38-75.  On January 22, 2020, the ALJ issued a partially favorable decision, finding Plaintiff was disabled from May 28, 2014 through January 1, 2016 but had medical improvement as of January 2, 2016 and thus his disability ended that date.  Tr. 12-37.

At step one of the sequential evaluation process, the ALJ found Plaintiff, who met the insured status requirements through December 31, 2019, has not engaged in substantial gainful activity since May 28, 2014.  Tr. 20.  At step two, the ALJ found that from May 28, 2014 through January 1, 2016, Plaintiff had the following severe impairments: left scapula fracture, left humerus fracture, and obesity.  *Id*.

At step three, the ALJ found Plaintiff's impairments medically equaled the severity of Listing 1.08 from May 28, 2014 through January 1, 2016.  Tr. 21.  The ALJ found Plaintiff had medical improvement beginning January 2, 2016, and Plaintiff's impairments no longer met or equaled a listing since January 2, 2016.  Tr. 23-24.  The ALJ then concluded that since January 2, 2016, Plaintiff has had the RFC to perform light work with the following limitations:

> [Plaintiff] can lift/carry 10 pounds frequently and 20 pounds occasionally, primarily with the dominant right upper extremity.  He can never push or pull with his non-dominant left upper extremity, never climb ladders, ropes, or scaffolds, and never crawl.  He can frequently stoop, kneel, crouch, and climb stairs.  He can less than occasionally reach in all directions with the non-dominant left upper extremity.  He can less than occasionally handle, finger, and feel objects with the non-dominant left hand.  [Plaintiff] must avoid all

exposure to extreme temperatures; excessive vibrations; and unprotected heights. [Plaintiff] can perform simple, routine tasks consistent with a reasoning level of 3 or less due [to] physical impairments and the effects of medications.

Tr. 24.

At step four, the ALJ found Plaintiff is unable to perform any of his past relevant work. Tr. 28. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as office helper, courier, and charge account clerk. Tr. 29. Therefore, the ALJ concluded Plaintiff was disabled from May 28, 2014 through January 1, 2016, but was not under a disability, as defined in the Social Security Act, from January 2, 2016 to the date of the decision. *Id.*

On July 1, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

ORDER - 8

1.  Whether the ALJ conducted a proper step-two analysis;

2.  Whether the ALJ properly evaluated Plaintiff's symptom claims;

3.  Whether the ALJ properly evaluated the medical opinion evidence; and

4.  Whether the ALJ conducted a proper step-five analysis.

ECF No. 18 at 4.

## DISCUSSION

**A. Step Two**

Plaintiff argues the ALJ erred in failing to find his mental impairments are severe impairments.  ECF No. 18 at 6-10.

At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits his/her physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  When a claimant alleges a severe mental impairment, the ALJ must follow a two-step "special technique" at steps two and three.  20 C.F.R. §§ 404.1520a, 416.920a.  First, the ALJ must evaluate the claimant's "pertinent symptoms, signs, and laboratory findings to determine whether [he or she has] a medically determinable impairment."  20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).  Second, the ALJ must assess and rate the "degree of functional limitation resulting from [the claimant's] impairments" in four broad areas of functioning: understand, remember, or apply information; interact with others;

ORDER - 9

concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. §§ 404.1520a(b)(2)-(c)(4), 416.920a(b)(2)-(c)(4). Functional limitation is measured as "none, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). If limitation is found to be "none" or "mild," the impairment is generally considered to not be severe. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). If the impairment is severe, the ALJ proceeds to determine whether the impairment meets or is equivalent in severity to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2)-(3), 416.920a(d)(2)-(3).

The ALJ found Plaintiff has been diagnosed with PTSD, depressive disorder, and anxiety disorder, but the evidence does not support a finding that the impairments has had more than a minimal effect on Plaintiff's ability to perform work-related activities. Tr. 20. The ALJ noted the treatment records document only mild mental health symptom complaints without evidence of significant functional deficits caused by the symptoms. *Id.* The ALJ found Plaintiff had only mild limitations in all four areas of functioning. Tr. 21. The ALJ noted Plaintiff reported improvement in his symptoms with medication and an anger management class, and he later stopped mental health treatment for a two-year period. Tr. 27.

Plaintiff argues the ALJ erred because he did not rely on any provider opinions nor cite to any specific records in making his non-severe finding. ECF No. 18 at 7-8 (citing Tr. 21). However, Plaintiff does not cite to any authority to

ORDER - 10

1  support the argument that an ALJ is required to rely on a medical opinion to

2  support a non-severe finding.  While Plaintiff argues the ALJ did not cite to any

3  specific records to support the finding, the ALJ further discussed Plaintiff's mental

4  impairments later in the decision, which includes citations to the record.  Tr. 27.

5  Plaintiff cites to medical providers who opined he had limitations due to his mental

6  impairments, but as discussed further *infra*, Plaintiff does not challenge any of the

7  reasons the ALJ offered to reject the opinions.  ECF No. 18 at 8-9.  Plaintiff does

8  not cite to any other evidence in his opening brief to support the argument that his

9  mental impairments cause more than mild limitations.  Plaintiff also does not offer

10  an explanation for his lack of mental health treatment for a two-year period.

11  Plaintiff has not met his burden in demonstrating the ALJ harmfully erred at step

12  two.  Plaintiff is not entitled to remand on these grounds.

13  **B. Plaintiff's Symptom Claims**

14      Plaintiff faults the ALJ for failing to rely on reasons that were clear and

15  convincing in discrediting his symptom claims.  ECF No. 18 at 10-14.  An ALJ

16  engages in a two-step analysis to determine whether to discount a claimant's

17  testimony regarding subjective symptoms.  SSR 16-3p, 2016 WL 1119029, at *2.

18  "First, the ALJ must determine whether there is objective medical evidence of an

19  underlying impairment which could reasonably be expected to produce the pain or

20  other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).

ORDER - 11

1    "The claimant is not required to show that [the claimant's] impairment could

2    reasonably be expected to cause the severity of the symptom [the claimant] has

3    alleged; [the claimant] need only show that it could reasonably have caused some

4    degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

5    Second, "[i]f the claimant meets the first test and there is no evidence of

6    malingering, the ALJ can only reject the claimant's testimony about the severity of

7    the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

8    rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

9    omitted).  General findings are insufficient; rather, the ALJ must identify what

10   symptom claims are being discounted and what evidence undermines these claims.

11   *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v.*

12   *Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

13   explain why he or she discounted claimant's symptom claims)).  "The clear and

14   convincing [evidence] standard is the most demanding required in Social Security

15   cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.*

16   *Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

17   Factors to be considered in evaluating the intensity, persistence, and limiting

18   effects of a claimant's symptoms include: 1) daily activities; 2) the location,

19   duration, frequency, and intensity of pain or other symptoms; 3) factors that

20   precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

ORDER - 12

side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; 5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; 6) any measures other than treatment

an individual uses or has used to relieve pain or other symptoms; and 7) any other

factors concerning an individual's functional limitations and restrictions due to

pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§

404.1529(c), 416.929(c).  The ALJ is instructed to "consider all of the evidence in

an individual's record," to "determine how symptoms limit ability to perform

work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

        The ALJ found that Plaintiff's medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of his

symptoms were not entirely consistent with the evidence.  Tr. 24-25.  Plaintiff

argues the ALJ erred in failing to give Plaintiff's testimony greater weight but does

not address with any specificity the reasons the ALJ set forth to reject Plaintiff's

claims.  ECF No. 18 at 10-14.  Thus, any challenge to those findings is waived.

*See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir.

2008) (determining Court may decline to address on the merits issues not argued

with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may

ORDER - 13

not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).

Further, Plaintiff does not set forth an argument as to how the ALJ's rejection of his symptom claims would be a harmful error. Plaintiff contends the ALJ should have credited his statements concerning his left arm limitations. ECF No. 18 at 12-13. Even if the ALJ limited Plaintiff to no use of his left arm, Plaintiff does not cite to any evidence that supports a finding that the inability to use an arm is in itself a disabling limitation. Courts have consistently held that claimants are capable of sustaining substantial gainful activity even without the use of an arm. *See, e.g., Knott v. Califano,* 559 F.2d 279 (5th Cir. 1977); *May v. Gardner,* 362 F.2d 616 (6th Cir. 1966). Plaintiff offers his own interpretation of the vocational evidence in arguing that he would be unable to perform the representative jobs due to his left arm limitations, ECF No. 18 at 13-14, but Plaintiff does not cite to any evidence or case law to support his interpretation. Despite the waiver of the issue and failure to show harmful error, the Court conducted an independent review of the ALJ's decision and finds the ALJ's opinion is supported by substantial evidence in the record.

*1. Inconsistent Objective Medical Evidence*

The ALJ found Plaintiff's symptom claims were inconsistent with the objective medical evidence. Tr. 25-27. An ALJ may not discredit a claimant's

1 symptom testimony and deny benefits solely because the degree of the symptoms

2 alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261

3 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir.

4 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400

5 F.3d 676, 680 (9th Cir. 2005). However, the objective medical evidence is a

6 relevant factor, along with the medical source's information about the claimant's

7 pain or other symptoms, in determining the severity of a claimant's symptoms and

8 their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2),

9 416.929(c)(2).

10        First, the ALJ found Plaintiff's physical symptom complaints were

11 inconsistent with the medical evidence. Tr. 25-26. While Plaintiff alleged ongoing

12 disability through the entire closed period, the testifying medical expert, Dr.

13 Lorber, opined Plaintiff had improvement after January 1, 2016. Tr. 25, 48-50.

14 After an October 2015 surgery, Plaintiff reported "excellent benefit," and Dr.

15 Lorber opined Plaintiff recovered from the surgery to the point of non-disability by

16 January 2, 2016. Tr. 25-26, 48-50, 1442-43, 1451-53. Plaintiff reported some

17 improvement with physical therapy, and he reported excellent benefit from joint

18 manipulation. Tr. 25-26 (citing, e.g., Tr. 1230, 1442-44). At a January 2016

19 examination, Plaintiff reported a low pain level, he had 3+ to 4 out of 5 motor

20 strength in his left upper extremity with reduced grip strength, and he was able to

ORDER - 15

use both hands for tasks and reaching.  Tr. 26 (citing Tr. 1466-69).  The examiner

opined Plaintiff was able to work full-time.  Tr. 26, 1475.  While Plaintiff reported

some ongoing limitations in February 2016, he met or partially met many of his

physical therapy goals and he was discharged from physical therapy.  Tr. 26 (citing

Tr. 723-24).  In April 2016, Plaintiff reported managing his pain with only over-

the-counter medications and gabapentin and he was able to perform many

movements with his left hand.  Tr. 1520.  Plaintiff continued to demonstrate

improvement in his symptom in June 2016 onward, such as demonstrating the

ability to make a fist.  Tr. 26 (citing Tr. 1551, 1565).

Second, the ALJ found Plaintiff's mental health symptom allegations were

inconsistent with the objective evidence.  Tr. 27.  As discussed *supra,* the medical

records document many normal findings and mild complaints of symptoms, and

Plaintiff reported improvement with treatment.  *Id.* (citing Tr. 1359, 1376, 1384,

1411).  Plaintiff also had a two-year gap in treatment from 2016 to 2018.  Tr. 27

(citing Tr. 1565).  Plaintiff argues the records demonstrate abnormalities including

nightmares, anxious mood, blunted affect, impaired short-term memory and

concentration, and distracted thoughts.  ECF No. 18 at 8 (citing Tr. 712, 1053,

1059); ECF No. 20 at 2-3 (citing Tr. 1060, 1063, 1963).  Despite some

abnormalities, Plaintiff reported improvement in his symptoms with medication

and anger management.  Tr. 1059, 1177, 1213, 1245.  At multiple examinations,

ORDER - 16

Plaintiff had largely normal mental status findings and reported no more than mild

symptoms at multiple appointments.  Tr. 1060, 1063, 1541, 1544-45, 1939, 1963.

Further, most of the mental health evidence relates to the period during which the

ALJ found Plaintiff was disabled, and even during the period shortly after his

injury, Plaintiff had normal thought processes, behavior, appearance, orientation,

abstract thinking, and judgment, although he had some abnormalities, including

anxious mood, blunted affect, and impaired short-term memory.  Tr. 1063.

Plaintiff then had no mental health treatment for almost two years from 2016 to

2018.  In October 2018, Plaintiff had normal appearance, intact judgment and

insight, normal orientation, fund of knowledge, and memory, although he had

somewhat rapid speech and circumstantial responses.  Tr. 1962-63.  In July 2019,

Plaintiff had a constricted affect and depressed mood, but normal thoughts,

orientation, intelligence, social judgment, and insight.  Tr. 1983.

On this record, the ALJ reasonably concluded that Plaintiff's symptom

claims were inconsistent with the objective medical evidence.  This was a clear and

convincing reason, along with the other reason offered, to reject Plaintiff' symptom

complaints.

## 2.  *Activities of Daily Living*

The ALJ found Plaintiff's activities of daily living were inconsistent with his

symptom claims.  Tr. 27.  The ALJ may consider a claimant's activities that

undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

While Plaintiff argues his left arm is essentially nonfunctional and he should be considered "one-armed" for the entire closed period, ECF No. 18 at 15, Plaintiff reported being able to use his left hand to hold vegetables to help cut the vegetables, and he reported being able to pick up light grocery bags, lifting his son from the ground and playing with him, swimming, and carrying a 25-pound laundry basket. Tr. 25-26 (citing Tr. 727, 729-30, 1232, 1371, 1374). Plaintiff reported being generally independent with his activities of daily living; he can drive, bathe, dress, help care for two children including taking them to the park and providing transportation for them, and assists his fiancé with her clothing store, although he reports some challenges with activities such as difficulty with heavy grocery bags. Tr. 1960-61. Plaintiff was able to complete an associate degree by

ORDER - 18

1  September 2018.  Tr. 27 (citing Tr. 1565).  Plaintiff returned to working at a

2  substantial gainful activity level in March 2019.  Tr. 27.

3       On this record, the ALJ reasonably concluded that Plaintiff's activities of

4  daily living were inconsistent with his symptom claims.  This finding is supported

5  by substantial evidence and was a clear and convincing reason to discount

6  Plaintiff's symptom complaints.  Plaintiff is not entitled to remand on these

7  grounds.

8  **C. Medical Opinion Evidence**

9       Plaintiff contends the ALJ erred in his consideration of the opinions of

10  Plaintiff's "medical and mental health providers."  ECF No. 18 at 14-16.

11       As an initial matter, for claims filed on or after March 27, 2017, new

12  regulations apply that change the framework for how an ALJ must evaluate

13  medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of*

14  *Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20

15  C.F.R. §§ 404.1520c, 416.920c.  The new regulations provide that the ALJ will no

16  longer "give any specific evidentiary weight…to any medical

17  opinion(s)…"  *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-

18  68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, an ALJ must consider

19  and evaluate the persuasiveness of all medical opinions or prior administrative

20  medical findings from medical sources.  20 C.F.R. §§ 404.1520c(a)-(b),

ORDER - 19

416.920c(a)-(b).  The factors for evaluating the persuasiveness of medical opinions

and prior administrative medical findings include supportability, consistency,

relationship with the claimant (including length of the treatment, frequency of

examinations, purpose of the treatment, extent of the treatment, and the existence

of an examination), specialization, and "other factors that tend to support or

contradict a medical opinion or prior administrative medical finding" (including,

but not limited to, "evidence showing a medical source has familiarity with the

other evidence in the claim or an understanding of our disability program's policies

and evidentiary requirements").  20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-

(5).

        Supportability and consistency are the most important factors, and therefore

the ALJ is required to explain how both factors were considered.  20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2).  Supportability and consistency are explained in

the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence
>     and supporting explanations presented by a medical source are to
>     support his or her medical opinion(s) or prior administrative
>     medical finding(s), the more persuasive the medical opinions or
>     prior administrative medical finding(s) will be.

> (2) *Consistency.* The more consistent a medical opinion(s) or prior
>     administrative medical finding(s) is with the evidence from other
>     medical sources and nonmedical sources in the claim, the more
>     persuasive the medical opinion(s) or prior administrative medical
>     finding(s) will be.

ORDER - 20

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  The ALJ may, but is not

required to, explain how the other factors were considered.  20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2).  However, when two or more medical opinions

or prior administrative findings "about the same issue are both equally well-

supported ... and consistent with the record ... but are not exactly the same," the

ALJ is required to explain how "the other most persuasive factors in paragraphs

(c)(3) through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(3),

416.920c(b)(3).

The Ninth Circuit recently addressed the issue of whether the changes to the

regulations displace the longstanding case law requiring an ALJ to provide specific

and legitimate reasons to reject an examining provider's opinion.  *Woods v.*

*Kijakazi*, No. 21-35458, 2022 WL 1195334, at *3 (9th Cir. Apr. 22, 2022).  The

Court held that the new regulations eliminate any hierarchy of medical opinions,

and the specific and legitimate standard no longer applies.  *Id.* at *3-4.  The Court

reasoned the "relationship factors" remain relevant under the new regulations, and

thus the ALJ can still consider the length and purpose of the treatment relationship,

the frequency of examinations, the kinds and extent of examinations that the

medical source has performed or ordered from specialists, and whether the medical

source has examined the claimant or merely reviewed the claimant's records.  *Id.* at

6.  However, the ALJ is not required to make specific findings regarding the

ORDER - 21

1    relationship factors.  *Id.*  Even under the new regulations, an ALJ must provide an

2    explanation supported by substantial evidence when rejecting an examining or

3    treating doctor's opinion as unsupported or inconsistent.  *Id.*

4        Plaintiff argues the ALJ erred in his analysis of the opinions of Plaintiff's

5    "medical and mental health providers," and the subsection heading addresses

6    "treating providers."  ECF No. 18 at 14.  However, in the subsection, Plaintiff does

7    not point to any specific providers or opinions except the opinion of Dr. Lorber,

8    who is a non-examining medical expert who testified at the hearing and is not one

9    of Plaintiff's providers.  ECF No. 18 at 14-16.  In other portions of the motion,

10   Plaintiff states the ALJ rejected the opinions of Arthur Lorber, M.D., and Ronald

11   Early, Ph.D., M.D.  *Id.* at 8-9, 18.  Dr. Early is also not a treating provider, as he

12   performed a single examination in 2019.  Tr. 1974-91.

13       *1.  Dr. Early*

14       On July 11, 2019, Dr. Early performed a psychological examination for

15   Plaintiff's workers compensation claim and rendered an opinion on Plaintiff's

16   functioning.  *Id.*  Dr. Early diagnosed Plaintiff with PTSD, depressive disorder not

17   otherwise specified, and anxiety disorder not otherwise specified.  Tr. 1986.  Dr.

18   Early opined Plaintiff has no to mild limitations in most areas of functioning, but

19   moderate and marked limitations in several areas of functioning.  Tr. 1988-90.  The

20   ALJ found Dr. Early's opinion was not persuasive.  Tr. 27.

ORDER - 22

1    Plaintiff discusses Dr. Early's opinion, and argues it is supported by the

2    evidence, but does not specifically address the reasons the ALJ offered to reject Dr.

3    Early's opinion.  ECF No. 18 at 8-10.  The ALJ found Dr. Early's opinion applied

4    standards related to workers' compensation which were not relevant to this

5    disability claim, and notes Plaintiff had improvement in his functioning over time.

6    Tr. 27.  Further, Plaintiff requested a closed period of disability due to his return to

7    work in March 2019.  Tr. 16.  Plaintiff argues the ALJ should have incorporated

8    the limitations set forth by Dr. Early into the RFC but does not address the fact that

9    Plaintiff requested a closed period of disability that ended prior to Dr. Early's

10    opinion date, and the opinion was rendered while Plaintiff was working 36 hours

11    per week as a chef/line cook. Tr. 236, 350.  Plaintiff sustained work from March

12    2019 through March 2020, ECF No. 18 at 3-4, and Plaintiff does not set forth an

13    argument as to how Dr. Early's disabling opinion is consistent with his ability to

14    sustain work at a substantial gainful activity level for a year.  As Plaintiff has not

15    set forth an argument regarding the reasons the ALJ rejected Dr. Early's opinion,

16    nor how the rejection is harmful error, Plaintiff has not met his burden in

17    demonstrating the ALJ harmfully erred by rejecting Dr. Early's opinion.

18    *2.  Dr. Lorber*

19    Dr. Lorber, a non-examining medical expert, rendered an opinion at

20    Plaintiff's hearing.  Tr. 44-50.  Dr. Lorber opined Plaintiff equaled Listing 1.08

ORDER - 23

from May 28, 2014 through January 1, 2016, and medically improved January 2,

2016.  Tr. 48-49.  The ALJ found the opinion that Plaintiff met a listing from May

2014 to January 2016 was persuasive, and his opinion that Plaintiff's disability

ended in January 2016 was supported by the evidence.  Tr. 22-23.

Plaintiff argues the ALJ failed to incorporate the left upper extremity

limitations opined by Dr. Lorber into the RFC, as the ALJ should have limited

Plaintiff to "essentially no work with his left arm."  ECF No. 18 at 18.  However,

Dr. Lorber opined Plaintiff can use his left arm to help with lifting and carrying,

but it is very limited, and he can occasionally handle and do fine fingering.  Tr. 49.

While Dr. Lorber opined Plaintiff's left arm is "functionally useless," he opined

Plaintiff was still capable of the light RFC with additional limitations that the ALJ

adopted.  Tr. 24, 49-50.  Plaintiff has not demonstrated that the ALJ rejected any

portion of Dr. Lorber's opinion.

While Plaintiff argues the ALJ erred in rejecting other medical opinions,

Plaintiff does not specify any opinions that were improperly rejected and does not

set forth an argument with any specificity regarding other opinions in the record.

ECF No. 18 at 14-16.  Because Plaintiff failed to develop this argument with any

specificity, it is waived.  *See Carmickle,* 533 F.3d at 1161 n.2 (determining Court

may decline to address on the merits issues not argued with specificity); *Kim*, 154

F.3d at 1000 (the Court may not consider on appeal issues not "specifically and

distinctly argued" in the party's opening brief).  Plaintiff is not entitled to remand on these grounds.

**D. Step Five**

Plaintiff argues the ALJ erred at step five by posing an incomplete hypothetical to the vocational expert and relying on expert testimony that was inconsistent with "the DOT and common knowledge."  ECF No. 18 at 16-20. However, Plaintiff's first argument is based entirely on the assumption that the ALJ erred in considering the medical opinion evidence and Plaintiff's symptom claims.  *Id.*  For reasons discussed throughout this decision, the ALJ's decision discrediting Plaintiff's symptom complaints and consideration of the medical opinion evidence are legally sufficient and supported by substantial evidence. Thus, the ALJ did not err in finding Plaintiff capable of performing other work in the national economy based on the hypothetical containing Plaintiff's RFC.

Next, Plaintiff argues the three representative jobs the vocational expert testified Plaintiff would be able to perform all exceed the RFC set forth by the ALJ.  ECF No. 18 at 18-19.  Plaintiff argues the jobs require more frequent use of his upper extremities than the RFC allows for, but Plaintiff concedes the DOT does not differentiate between bilateral and one-armed functions.  *Id.*  Plaintiff argues he cannot drive a car to perform the courier job, *id.* at 19, which is inconsistent with evidence discussed *supra* that demonstrates Plaintiff drives.  Plaintiff also argues

he would perform the work too slowly to be tolerated in the workplace, but this argument again relies on his own symptom complaints and the medical opinion evidence, which the ALJ properly rejected. *Id.* at 18-19. Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Kilolo Kijakazi as Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 19**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED May 3, 2022.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 26